UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jennifer Boykin,<br><br>*on behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Choice Health Insurance, LLC,<br><br>Defendant. | **JUDGE JOSEPH DAWSON III**<br><br>CASE NO. 4:22-cv-03940-JD |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I.     INTRODUCTION

Plaintiff Jennifer Boykin ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits this Memorandum in support of her Unopposed Motion for Final Approval of Class Action Settlement with Defendant Choice Health Insurance, LLC ("Defendant"),  wherein she seeks entry of an order: (1) granting final approval of the proposed settlement as memorialized in the Settlement Agreement ("S.A.") (ECF No. 27-1); (2) finally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e); and (3) granting Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award (ECF No. 32).

The underlying action between Plaintiff and Defendant pertains to an alleged unauthorized disclosure ("Data Security Incident") of Plaintiff's and Class Members' names, Social Security

1

numbers, Medicare beneficiary identification numbers, dates of birth, address and contact information, and health insurance information (collectively, "Private Information") in or around May 2022. Subsequently, Plaintiff filed a Class Action Complaint on November 8, 2022 asserting claims against Defendant relating to the Data Security Incident.

While Defendant disputes the claims alleged in the Complaint and maintains it has valid defenses as to liability and damages, Defendant has agreed to provide relief to Settlement Class Members as set forth in the Settlement Agreement. In accordance with the Order and by motion submitted concurrently herewith, Plaintiff now requests the Court finally approve the Settlement.

As discussed below, Plaintiff and Class Members submit that the proposed Settlement is in the best interests of the Class, and provides fair, just, and substantial benefit to Settlement Class Members, which was described to the Class in the comprehensive Notice Plan, and it satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. Nothing has occurred since the Court granted preliminary approval of the Settlement which would disturb the Court's prior findings. The reaction of the Class has been overwhelmingly positive with no objections and only one request for exclusion. For the reasons set forth, Plaintiff respectfully requests the Court grant final approval of the Settlement. A proposed Order is attached as **Exhibit C** to this Motion.

## II.    FACTUAL BACKGROUND

### A.  Nature of Action

Defendant is an independent broker of health insurance products. In May 2022, Defendant discovered that unauthorized individuals accessed a database storing the personal information of Plaintiff and approximately 68,000 other individuals. The information allegedly included Plaintiff's and Class Members' names, Social Security numbers, Medicare beneficiary identification numbers, dates of birth, address and contact information, and health insurance

2

information.

### B. The Litigation

On November 8, 2022, Plaintiff initiated this action against Defendant on behalf of herself and all others similarly situated ("Class Members"), alleging that Defendant failed to implement and maintain reasonable data security measures to protect the Private Information on its database. The parties met and conferred shortly thereafter and engaged in informal discovery to assess each side's respective position and sought several extensions to pursue settlement discussions. On March 28, 2023, Plaintiff filed her First Amended Class Action Complaint, bringing claims for (1) negligence; (2) violation of South Carolina data breach statutes, S.C. Code § 1-11-490 and S.C. Code § 39-1-90; (3) breach of implied contract; and (4) breach of fiduciary duty. *See* ECF No. 19. After filing the First Amended Class Action Complaint, the parties resumed settlement discussions and reached a settlement in principle. On June 28, 2023, the parties filed a Consent Motion to Stay and Notice of Settlement. ECF No. 20. The Court granted preliminary approval on October 11, 2023. ECF No. 28.

### C. Settlement Negotiations

In January 2023, the parties exchanged significant informal discovery, including, but not limited to, class size, types of information disclosed, submissions made by Defendant to federal and state entities, and insurance coverage. Declaration of Philip J. Krzeski in support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Krzeski Decl.") attached as **Exhibit A**, ¶ 8. Through the informal discovery process, Plaintiff was able to properly evaluate damages on a class-wide basis. *Id*. The Parties then attended mediation with renowned mediator Bennett G. Picker ("Mr. Picker") on February 7, 2023. *Id*. at ¶ 11. Despite an all-day mediation session, the Parties were unable to reach a resolution of the case. *Id*. Following the filing of the First Amended

Complaint (ECF No. 19) on March 28, 2023, the parties resumed settlement negotiations and were able to reach an agreement in principle. Krzeski Decl., ¶ 11-12. On September 11, 2023, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Notice Plan (ECF No. 25), which the Court preliminarily approved on October 11, 2023 (ECF No. 28).

## III.    SUMMARY OF THE SETTLEMENT

Under the proposed Settlement, Defendant will create a non-reversionary common Settlement Fund of $500,000. S.A. ¶ 1.33. This Settlement Fund will be used to pay for settlement class notice and administration costs, Class Counsel's attorneys' fees and case expenses, and cash payments to Class Members who submit a Valid Claim. S.A. ¶¶ 1.34, 7.2, 8.1. The Settlement Agreement defines the Class as:

> all individuals to whom Choice Health sent notice of the Data Incident that occurred in May 2022. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

S.A. ¶ 1.7. Through discovery, Plaintiff determined that the Class is comprised of approximately 68,177 individuals nationwide. Krzeski Decl., ¶ 10.

### A.    Compensation

The Settlement Fund will first be used to pay the costs of Settlement Administration, attorneys' fees and expenses, and any service award to Plaintiff. S.A. ¶ 8.1. If approved by the Court, the remaining portion will remain for the payment of cash benefits to Class Member. This money will first be used to reimburse Class Members' out of pocket expenses or losses related to the Data Security Incident, up to $4,000 per Class Member submitting a Valid Claim. S.A. ¶ 2.2.

To receive compensation for out-of-pocket losses or expenses, Class Members must submit a Claim Form and supporting documentation. Eligible expenses or losses include, but are not limited to:

a. unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Social Security number;

b. unreimbursed costs incurred on or after May 7, 2022, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;

c. other unreimbursed miscellaneous expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

d. other mitigative costs fairly traceable to the Data Incident that were incurred on or after May 7, 2022, through the date of the Settlement Class Member's claim submission; and

e. unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Settlement Class Member.

S.A. ¶ 2.2. Funds remaining after the payment of out-of-pocket losses shall be split pro rata amongst all Class Members submitting a valid claim. Based on previous experience, Class Counsel predicted that there will be sufficient funds remaining in the Settlement Fund after the payment of Out-of-Pocket Losses for additional pro rata distributions of approximately $75 to each Class Member submitting a Valid Claim. *See* S.A., Exhibits A-B, D.

### B. Remedial Measures and Security Enhancements

For a period of four (4) years following the Effective Date of the Settlement Agreement, Defendant agrees to maintain reasonable information security policies. S.A., § 2.5. The actual cost for the implementation and maintenance of these reasonable security policies will be paid by Defendant separate and apart from the Settlement Fund. Defendant has provided reasonable access to confidential confirmatory discovery regarding the changes and improvements that have been

5

made or are being made to protect Class Members' Private Information.

### C.  Scope of Release

In exchange for consideration above, Plaintiff and Class Members who do not timely and validly excuse themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Security Incident at issue in this litigation. S.A. ¶¶ 1.26, 1.28, 1.39, 6.1. The Settlement's finality is not dependent on the Court awarding attorney's fees and expenses to Class Counsel. S.A. ¶ 7.1, 7.4. The Settlement Agreement states that,

> Upon the Effective Date, each Class Member who did not opt-out of the settlement, including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against all Released Parties.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member, including Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.  Any other claims or defenses Plaintiff and each and all of the Class Members may have against Defendant that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Data Incident, the Litigation, or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

S.A. ¶ 6.1.[1]

### D.  Fees and Expenses

The Settlement Administrator seeks fees and expenses from the Settlement Fund totaling $73,382 (*id.* ¶ 18), Plaintiff Jennifer Boykin seeks a service award of $3,000, and Class Counsel seek fees of one-third (1/3) the Settlement Fund ($166,666.67) plus costs and expenses of $11,611.23 (ECF No. 32). Plaintiff respectfully requests that the Court grant these requests in

---

[1] '"Released Claims' shall collectively mean any and all past, present, and future claims and causes of action related to the Data Incident …." S.A. ¶ 1.26.

connection with final approval.

### E.  Class Notice and the Claims Administrator

The Court approved Analytics, LLC ("Analytics") to serve as the Claims Administrator. ECF No. 28, at p. 3. Shortly after this Order, Analytics received Settlement Class Member data. *See* Declaration Settlement Administrator Regarding Notice ("Settlement Administrator Decl.") attached as **Exhibit B**, ¶6. The files included names and addresses for 68,170 records of Settlement Class Members. *Id.* Thirty-three (33) of the records did not include an address, and 1,399 of the records were duplicates and were removed from the population. *Id.* Analytics also received email addresses for approximately 2,909 Class Members. *Id.* ¶ 9.

 Following the Preliminary Approval Order and receipt of Class Member data, the Settlement Administrator carried out a successful notice program that complied with its previous representations to the Court (ECF No. 25-4), the Settlement Agreement (ECF No. 27-1), and the Court's Order (ECF No. 28).[2] Specifically, on November 10, 2023, Analytics mailed the Court-approved Notice of Proposed Class Action Settlement ("Notice") to the 66,738 Settlement Class Members for whom Analytics had a mailing address, and emailed the Court-approved Notice to the 2,909 Class Members for whom it had an email address. Settlement Administrator Decl., ¶¶ 8-9. When Email Notices or Postcard Notices were returned as undeliverable, Analytics ran a trace that attempted to locate valid contact information and resent the notices. *See id.* ¶¶ 9, 13-14. The Settlement Administrator estimates that at least 58,661 (approximately 88%) Class Members successfully received at least one form of direct notice in this case. *Id.* ¶ 14.

---

[2] On October 26, 2023, Analytics sent CAFA Notices to the Attorneys General of the States where Class Members were residents, according to defendants' records, and the Attorney General of the United States.  Settlement Administrator Decl., ¶ 5.

Before distributing the Notices, Analytics also established a Settlement Website, toll-free phone number, and dedicated email inbox. *Id.* ¶¶ 10-11. The Settlement Website allowed Class Members to obtain copies of the Settlement Agreement, Notices, Claim Form, the Court's Preliminary Approval Order, Exclusion Form, and the Complaint. *Id.* ¶ 10. The Settlement Website also permitted Settlement Class Members to submit a claim form. *Id.*

Analytics has agreed that its combined fees and expenses in this matter shall not exceed $73,382.00. *Id.*, ¶ 18. Such fees and expenses shall be paid out of the Settlement Fund (subject to Court approval). S.A., ¶ 2.7.

### F.  Class Member Claims

To date, the Settlement Administrator has received 2,271 claims for a claim rate of roughly 3.4%. Settlement Administrator Decl., ¶ 15. Of these 2,271 claims, 1,879 have already been deemed completely or partially valid. *Id.* This means that to date, there are 1,879 valid claims for a pro rata share of the cash remaining in the common fund after the payment of any approved fees, costs, expenses, service award, and valid claims for documented out of pocket losses.

The Settlement Administrator seeks fees and expenses from the Settlement Fund totaling $73,382 (*id.*, ¶ 18), Plaintiff Jennifer Boykin seeks a service award of $3,000, and Class Counsel seek fees of one-third (1/3) the Settlement Fund ($166,666.67) plus costs and expenses of $11,611.23 (ECF No. 32). If approved, there will be $245,340.10 remaining for Class Member benefits. This means that the 1,879 individuals who submitted at least partially valid claims would receive an average cash benefit of $130.57. Even if all 2,271 claims are ultimately deemed to be at least partially valid following the deficiency process (which is unlikely), each claimant will receive an average cash benefit of $108.03.

Although the exact amount of the pro rata cash benefits paid to each valid claimant will

ultimately depend on the total amount that is first allocated to valid claims for documented out of pocket losses, to date, approved claims for documented out of pocket losses total only $439.99. Settlement Administrator Decl., ¶ 15. This means that it is very likely the amount of pro rata cash benefits paid to each valid claimant will exceed the $75 that was projected in the approved settlement notices. *See* S.A., Exhibits A-B, D.

### F. Opt Outs and Objections

Settlement Class Members were given the opportunity to opt-out of the class by sending a written request for exclusion to the Claims Administrator postmarked no later than 90 days from the Order Granting Preliminary Approval. S.A., § 4. Also, by that time, Settlement Class Members were able to object to the Settlement by filing a written notice of objection with the Clerk of Court. *Id*., § 5. The Notices and Website included the procedures for Settlement Class Members to follow in order to exclude themselves from or object to the Settlement. To date, there have been no objections and only one request to be excluded. Settlement Administrator Decl., ¶¶ 16-17.

## IV.    FINAL APPROVAL OF THE CLASS ACTION SETTLMENT IS WARRANTED

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. The settlement of complex class action litigation is favored by public policy and strongly encouraged by courts. *See Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes."); *Velazquez v. Burch Equip., LLC*, No. 7:14-CV-00303-FL, 2016 WL 917320, at *1 (E.D.N.C. Mar. 8, 2016) (emphasizing the strong judicial policy in favor of settlements). This is particularly true in class actions, which typically involve complex disputes, and where settlement "minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already

9

scarce judicial resources." *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (internal quotation marks omitted)).

### A.  Certification of the Proposed Class for Settlement Purpose is Appropriate

In conjunction with preliminary approval of the proposed Settlement, the Court first determined whether the Settlement Class is appropriate for certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *2 (E.D.N.C. Sept. 26, 2016). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Krakauer v. Dish Network L.L.C.*, No. 14-CV-333, 311 FRD 384, 388 (M.D.N.C. 2015).

The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. Rule 23(b)(3) provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction" when considering a settlement. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 595–96 (W.D.N.C. 2010) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)); *see also In re A.H. Robins, Co., Inc.,* 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services."). Further, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is

10

that there be no trial." *Amchem,* 521 U.S. at 620.

The Court previously analyzed each relevant factor at the preliminary approval stage and concluded that the prerequisites of Rules 23(a) and (b)(3) were met. Specifically, the Court found that the numerosity requirement of Rule 23(a)(1) is satisfied. (ECF No. 12 at 2.) Likewise, the commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law and fact common to the Settlement Class Members, which predominate over any individual questions. (ECF No. 12 at 2-3.) The Court also determined that the typicality requirement of Rule 23(a)(3) is met because Plaintiff's claims are typical of victims of the data breach and their claims are typical of the claims of the Settlement Class Members. *Id.* at 3. Further, the Court found that the adequacy requirement of Rule 23(a)(4) was satisfied because "Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class." *Id.* The Court also found that the predominance and superiority requirements of Rule 23(b)(3) were met. *Id.*

Nothing has occurred in the interim that should disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and 23(b)(3) and that certification for settlement purposes is appropriate. A summary of these factors follows:

**Numerosity—Rule 23(a)(1).** Defendant produced information and documents in response to informal discovery requests, and later produced records to the Settlement Administrator, that confirm the Settlement Class consists of more than 68,000 members. *See* Krzeski Decl., 10; Settlement Admin Decl., ¶ 6. Numerosity is clearly satisfied here. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984).

**Commonality—Rule 23(a)(2).** This case presents a myriad of common questions of law and fact, such as whether Defendant owed a duty to protect and secure the Private Information of

its customers, whether Defendant breached that duty, whether Defendant maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Settlement Class Members' Private Information, and whether Plaintiff has actionable claims. These common questions of law and fact arise from the same incident—the Security Incident, and clearly satisfy commonality. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).

**Typicality—**Rule 23(a)(3). All of Plaintiff's claims arise out of the same alleged conduct by Defendant related to the Security Incident. Like commonality, typicality is satisfied.

**Adequacy of Representation—Rule 23(a)(4).** The Class Representative is Defendant's former customer and was recognized by Defendant as having their Private Information potentially compromised as a result of the Security Incident, and allegedly suffered harm as a result of the Security Incident, as did all of the other Settlement Class Members. Plaintiff's interests are not antagonistic with the Settlement Class and no fundamental conflict exists. Plaintiff has also actively participated in the litigation of this case, and has been in regular communication with their attorneys regarding these proceedings. Plaintiff has had, and continues to have, every incentive to litigate this case to the fullest extent and maximize the amount recovered for the entire Settlement Class. *Hutson v. CAH Acquisition Co. 10, LLC*, No. 1:15-cv-742, 2016 WL 4289473, at *5 (M.D.N.C. Aug. 15, 2016).

And with respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims, and the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits, and were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate. *Id.*

**Predominance—Rule 23(b)(3)**. Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011). Rule 23(b)(3) is satisfied because, as shown by the multiple common questions of law and fact described above, "[common] questions of law or fact ... predominate over any questions affecting only individual members" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001); *Brown v. Nucor Corp.*, 785 F.3d 895, 922 (4th Cir. 2015).

**Superiority—Rule 23(b)(3)**. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Class treatment here is superior to other available methods for the fair and efficient adjudication of the controversy. The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. Litigating the same claims through individual litigation would be inefficient. The superiority requirement is thus satisfied.

Because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the Settlement Class is appropriate.

### B.  The Class Notice Program Complied with Rule 23 and Due Process

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ.

P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176. Moreover, the settlement notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975)). A notice reaching 70-95% of the class is often cited  as  meeting  the requirements  of  Rule  23(c)(2)(B)  and  due  process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf).

The Notice Plan preliminarily approved by the Court and executed by the Settlement Administrator was very successful. The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. The manner of providing notice, which included individual notice by mail and/or email to all Class Members who could be reasonably identified (including reminder emails to individuals for whom the Settlement Administrator had an email address), represented the best notice practicable under the circumstances. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61,

14

71 (2d Cir. 1982) (notice sent to individuals' last known address and published in Wall Street Journal constituted adequate notice, even though some members did not receive direct notice).

The Settlement Administrator estimates that it successfully provided direct notice to roughly 88% of Class Members. Settlement Administrator Decl., ¶ 14. This is well within the 70-95% range that is required to satisfy due process. *See Shy*, 2022 WL 2125574, at *5 (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf). The claims rate obtained to date (3.4%) is also typical in consumer class actions and is indicative of a successful notice program. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) (approving data breach settlement with a claims rate of roughly 0.23%), *aff'd*, 892 F.3d 968 (8th Cir. 2018).

The notice program in this case satisfied the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement is Fair, Reasonable, and Adequate

The Proposed Settlement is fair, reasonable, adequate and should be finally approved. Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for review of a proposed class action settlement is a well-established two-

step process. For the first stage, the Court preliminarily approves the settlement, certifies the class for settlement purposes and authorizes notice to be given to the settlement class. Manual for Complex Litig. (Fourth) §21.632 at 320 (2004). Once the class has received notice and has an opportunity to object to or opt-out of the settlement, the court then holds a final settlement hearing. *Id*. §21.633 at 321-22.

The general standard by which courts are guided when deciding whether to grant approval of a class action settlement is whether the proposed settlement falls within the range of what could be found "fair, reasonable and adequate." *Id*.; *see also* Fed. R. Civ. P. 23(e)(2). Approval is proper under the amended Rule 23(e)(1)(B)(i) upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Evaluating these factors, the Proposed Settlement satisfies the standard for final approval.

### 1.  *Adequacy of Representation*

The Court has already recognized Class Counsel's experience and qualifications in appointing them as Settlement Class Counsel pursuant to Rule 23(g). (ECF No. 28 at 2). And

likewise, the Court has recognized that Plaintiff "fairly and adequately protect and represent the interests of Settlement Class." *Id.* at 3. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Plaintiff does not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced. (ECF No. 28 at 2-3).

### 2. *Arm's Length Negotiations*

The Settlement resulted from arms' length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this action, under the supervision of a neutral and experienced mediator. Krzeski Decl. ¶¶ 7, 11-13. At all times, these negotiations were arms' length and, while courteous and professional, negotiations were intense and hard-fought on all sides. *Id.*, ¶¶ 13, 17. These circumstances weigh in favor of approval. *See Manual for Complex Litig. (Fourth)* at §30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

### 3. *The Relief Provided for the Class is Adequate*

The Fourth Circuit "has 'specified the following factors for assessing' a class settlement's 'adequacy': (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *1988 Tr. for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022).

The relief offered by the Settlement (both monetary and equitable) is fair, reasonable, and adequate considering the risks and delays of continued litigation. This is evidenced by the fact that there have been no objections to the Settlement. Although Plaintiff is confident in the merits of her claims, the risks and delays involved in prosecuting a class action through trial cannot be disregarded. Krzeski Decl., ¶¶19-21. Plaintiff's claims would still need to survive likely motions practice (*e.g.*, a motion to dismiss and motion for summary judgment) and succeed at class certification.[3]

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement, "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged," especially in complex cases that have the potential to last for years. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting

---

[3] Defendant's solvency is not at issue. Accordingly, this factor is neutral.

18

that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiff and Settlement Class Members gain significant and immediate benefits without having to face further risk.

While Plaintiff believes she would prevail on her claims, there is little directly analogous precedent to rely upon. Krzeski Decl., ¶¶23-25. Beyond the merits, class certification is challenging in any case. Class certification has been denied in other consumer data breach cases. *See, e.g., Frechette v. Health Recovery Servs., Inc.*, No. 2:19-CV-4453, 2023 WL 5588560 (S.D. Ohio Aug. 29, 2023).

The delay attendant in continuing to litigate this case also favors approval of the Settlement. Many more months and significant additional costs would be required for the parties and the Court to complete the pre-trial proceedings, summary judgment and *Daubert* motions, and class certification. After trial, either party could appeal the Court's class certification and summary judgment decisions, which could take years to complete. Assuming the parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court or on appeal. Krzeski Decl. ¶ 32-35.

By contrast, the Settlement affords Settlement Class Members significant and timely benefits which compare favorably to what Settlement Class Members could recover were they to secure a favorable judgment at trial. In the experience of Class Counsel, the monetary relief provided by this Settlement is fair and reasonable in light of reported average out-of-pocket expenses due to a data breach. Krzeski Decl. ¶¶ 16, 26, 32, 34-35. In addition, the monetary value

provided by the Settlement is in line with, or superior to, those of other settlements in data breach class actions that have been approved by other courts:

| Case Name | Case Number | Settlement Amount | Class Size | Average Value Per Person |
|---|---|---|---|---|
| *Cochran v. Kroger Co.* | No. 5:21-cv-01887 (N.D. Cal.) | $5,000,000 | 3,825,200 | $1.31 |
| *Thomsen v. Morley Companies, Inc.* | No. 1:22-cv-10271 (E.D. Mich.) | $4,300,000 | 694,679 | $6.19 |
| *In re C.R. England, Inc. Data Breach Litigation* | No. 2:22-cv-374-DAK (D. Utah) | $1,400,000 | 224,572 | $6.23 |
| *Reynolds v. Marymount Manhattan College* | No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Jones et al. v. P2ES Holdings, LLC* | No. 23-cv-00408-GPG (D. Colo.) | $1,250,000 | 179,659 | $6.96 |
| ***Boykin v. Choice Health Insurance, LLC*** | **No. 4:22-cv-03940 (D.S.C.)** | **$500,000** | **68,177** | **$7.33** |
| *Julien v. Cash Express, LLC* | No. 2022-cv-221 (Putnam Cty., Tenn.) | $850,000 | 106,000 | $8.02 |
| *Tucker v. Marietta Area Health Care* | No. 2:22-cv-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |

*See* Krzeski Decl, ¶¶ 17-18.

Furthermore, the injunctive relief provided for in this Settlement is significant and ensures the rights of the class because it swiftly commits Defendants to certain security measures and protection of personal information. These remedial measures are attributable to the Settlement and are squarely consistent with the claims presented by Plaintiff in the Litigation. Krzeski Decl. ¶18; S.A. § 2.5. These commitments will ensure the adequacy of Defendants' data security practices, as well as providing protection for consumers in the future. Without this Settlement, there is little

Settlement Class Members could do individually to achieve similar promises from Defendant regarding data security going forward. The Settlement is calculated to ensure that Defendant not only employs the necessary, immediate resources to address existing data security vulnerabilities, but also employs the consistent best practices and accountabilities needed for long-term, proactive data security. Accordingly, the Settlement benefits present a substantial recovery, especially considering the litigation risks and delays noted above.

### 4. *The Settlement Treats Class Members Equitably Relative to Each Other*

Finally, Rule 23(e) requires that the Settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement based on expenses incurred, not on any unequitable basis. *See generally* S.A. ¶ 2. Moreover, all money remaining in the Settlement Fund after the payment of fees, expenses, Class Representative Service Award, and claims for Out-of-Pocket Losses will be split evenly amongst each Class Member submitting a claim. Because there is no disparate treatment amongst the members of the proposed Settlement Class, the Settlement merits final approval.

### 5. *The Terms Relating to Attorneys' Fees, Costs, and Expenses, and Service Awards are Reasonable*

After reaching agreement on benefits to Settlement Class Members, the Parties separately negotiated Class Counsel's claims for attorneys' fees, costs, and reimbursement of litigation expense. SA, ¶ 7. Defendant agreed to not challenge a petition for an award of attorneys' fees at or below one-third (1/3) of the Settlement Fund, in addition to litigation expenses. *Id.*, ¶ 7.2. Defendant also agreed to pay Plaintiff a service award of $3,000. *Id.*, ¶ 7.3. The Parties negotiated these terms separately from the other parts of the Settlement. *Id.*, ¶ 7.1 The Settlement is not

conditioned upon the Court's approval of the fee award. *Id*., ¶ 7.4

In accordance with these provisions, on December 12, 2022, Plaintiff moved for attorneys' fees of one-third of the Settlement Fund plus reasonable expenses, and a service award of $3,000 for named Plaintiff (ECF No. 32). For the reasons articulated in more detail in the fee application (ECF No. 32s), the Settlement terms relating to fees, costs, expenses, and service awards are reasonable, accounted for, and properly justified.

### 6. *Agreements Required to be Identified by Rule 23(e)(3)*

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." No separate agreement between the Parties exists. Krzeski Decl., ¶ 38.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(e); (2) finally approving the Settlement as fair, adequate, and reasonable; and (3) granting Plaintiff's motion for fees, costs, expenses, and service award (ECF No. 32).

Date: January 12, 2024        Respectfully submitted,

*/s/ Glenn V. Ohanesian*
Glenn V. Ohanesian, DCSC Fed ID #5317
**OHANESIAN & OHANESIAN**
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Telephone: 843-626-7193
Facsimile: 843-492-5164
*OhanesianLawFirm@cs.com*

**CHESTNUT CAMBRONNE PA**
Philip J. Krzeski (admitted *pro hac vice*)
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

**MARKOVITS, STOCK, & DEMARCO   LLC**
Terence R. Coates (admitted *pro hac vice*)
Dylan J. Gould (admitted *pro hac vice*)
Jonathan T. Deters (admitted *pro hac vice*)
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*
*jdeters@msdlegal.com*

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon (*pro hac vice* forthcoming)
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
Email: *jlyon@thelyonfirm.com*

*\*Pro Hac Vice Application forthcoming*

*Counsel for Plaintiff and Putative Class*

**CERTIFICATE OF SERVICE**

I, Glenn Ohanesian, certify that I caused the foregoing to be electronically filed in this case on January 12, 2024, using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

*/s/ Glenn V. Ohanesian*
Glenn V. Ohanesian, DCSC Fed ID #5317
